The Honorable Chaney Taylor, Jr. State Representative P.O. Box 2721 Batesville, Arkansas 72503-2721
Dear Representative Taylor:
I am writing in response to your request for my opinion on the following questions:
 1. Can the Board of Directors of a Public Water Authority created pursuant to Act 115 of 2001 legally charge its customers a monthly fee for volunteer fire department dues?
 2. Can a Public Water Authority created pursuant to Act 115 of 2001 put the issue of charging its customers a monthly fee for volunteer fire department dues to a vote of its members? If so, is a vote of approval by a simply majority legally binding on all members?
By way of background, you have offered the following information:
 Southside Public Water Authority, Inc. was originally formed as Southside Water Association, Inc., a non-profit organization, approximately 30 years ago, and has grown considerably since that time. Today, Southside provides potable water to roughly 3,000 meters, representing a population of about 7,000 to 9,000. The service area of Southside Public Water Authority includes at least seven (7) volunteer fire departments.
RESPONSE
In my opinion, the answer to both of your questions is "no."
Question 1: Can the Board of Directors of a Public Water Authoritycreated pursuant to Act 115 of 2001 legally charge its customers amonthly fee for volunteer fire department dues?
As noted above, I believe the answer to this question is clearly "no."
Act 115 of 2001(the "Act"), codified at A.C.A. § 4-35-201 et seq. (Supp. 2001), expresses the following legislative intent:
 It is the intent of the General Assembly to provide a means by which not-for-profit corporations involved in the sale, transmission and distribution of potable water to members of the public and others may convert their entity status from that of a body corporate to that of a body politic thereby allowing such entities the opportunity to access the tax-exempt capital markets and thereby assuring the State of Arkansas and the customers of such entities of the lowest water rates possible.
Based upon your factual recitation, I gather that Southside Public Water Authority, Inc. (the "Water Authority") has reorganized pursuant to the Act.[1]
The Act unequivocally declares that its provisions are in all respects self-sufficient and that no other law shall apply to the creation and authority of a water authority. Act 115, § 4. At issue, then, is whether any provision of the Act might authorize the Water Authority to charge customers a fee for volunteer fire department dues. In my opinion, no such authority exists. Section 9(6) of the Act, which itemizes a water authority's powers, recites as the primary substantive function of a water authority "[t]o construct, enlarge, equip, improve, maintain, administer and operate one (1) or more projects." Section 2(5) defines the term "project" as follows:
 "Project" means any raw or potable water intake, treatment, distribution, transmission, storage, pumping, well site, well field or other facility, or any combination of the foregoing, which has as its purpose the providing of raw or potable water to members of the public and commercial, industrial or other users, along with any and all other appurtenances, equipment, betterments or improvements related thereto. The above projects may include any lands, or interest therein, deemed by the board to be desirable in connection therewith, and necessary equipment for the proper functioning and operation of the buildings or facilities involved.
The Act contains numerous further references to "projects" thus defined.See, e.g., Act 115, §§ 9(5) (authorizing acquisitions in support of projects); 9(16) (authorizing dispositions "needed or useful in connection with, or in the operation of, any project"); 10 (declaring "[e]ach project, and all income therefrom . . . public property used exclusively for a public purpose . . . exempt from ad valorem taxation); 11(a) (authorizing the issuance of bonds for the development of projects); 11(c) (directing that principal and interest on the bonds be paid out of project revenues); 13 (authorizing the pledge of project revenues as security for the bonds); and 15(a) (directing that bond proceeds be used only to develop the project for which they were issued). Conspicuously absent in the Act is any suggestion that a water authority can use bond proceeds or project revenues for any purpose other than the development, maintenance and operation of "projects." Simply put, the raison d'etre of a water authority is to supply water, not to subsidize the activities of water users, no matter how noble the users' activities.
Finally, I should address your representation that the Water Authority service area includes at least seven volunteer fire departments. Although I am not entirely certain what import you attach to this information, you may be inquiring whether the existence of these departments might in itself justify billing residents for service through the Water Authority. As my immediate predecessor noted in Ark. Op. Att'y Gen. No.96-114:
 Under Arkansas law, what is referred to as a "volunteer fire department" may take one of any number of legal forms. Such departments may be incorporated as purely private nonprofit corporations collecting dues or membership fees [see A.C.A. §§ 4-28-201 et seq. or 4-33-101 et seq.]; as fire protection districts under A.C.A. § 14-284-101 et seq.
or 14-284-201 et seq., or suburban fire improvement districts under A.C.A. § 14-92-201 et seq., all of which assess local benefits to be collected with ad valorem taxes; as a county "volunteer fire department" under A.C.A. § 14-20-108(c) or as a county created subordinate service district under A.C.A. §§ 14-14-708 and -709 (1987). In addition, although the statutes authorizing the creation of municipal fire departments do not refer to such departments as "volunteer" departments (see A.C.A. 14-53-101), some municipalities routinely characterize their departments as such.
See also Ark. Op. Att'y Gen. Nos. 97-208, 98-148 and 99-346 (acknowledging these distinct types of organizations). I see no need to speculate about which of the statutory schemes referenced in this passage might apply to the various volunteer fire departments located within the Water Authority district, since none of the statutes would support billing for fire-protection services through a public water authority.Compare Ark. Op. Att'y Gen. No. 95-207 (opining that a fire protection district formed pursuant to A.C.A. § 14-284-201 et seq. may not collect the fee through the municipal water system by placing it on a resident's monthly water bills). These statutes would consequently not support the proposal set forth in your request even if the Act were not entirely self-contained, which it is.
Question 2: Can a Public Water Authority created pursuant to Act 115 of2001 put the issue of charging its customers a monthly fee for volunteerfire department dues to a vote of its members? If so, is a vote ofapproval by a simply majority legally binding on all members?
As previously noted, I believe the answer to this question is also "no." The legislature has clearly indicated in the Act that water authorities exist to finance and effect the capital construction of waterworks and to operate and maintain the facilities once constructed. Nothing in the Act could be interpreted as a general legislative mandate to undertake or promote any other activity — even one associated with water, like firefighting. Accordingly, I believe it would constitute a misallocation of public funds for the Water Authority even to promote voter approval of volunteer fire department dues, much less to conduct an election on this issue without any legislative sanction to do so.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] Given this conversion of status, the designation "Inc." in the Water Authority's name would appear to be somewhat misleading, since the resulting organization is properly classified not as a corporation, but as a "body politic and governmental entity." Act 115, § 2(9).